Please be seated. Good morning, everyone. The first case on the docket today is Bruns v. City of Centralia, Clause No. 5-13-0094. And Mr. Price, you're up. Thank you, Your Honor. Good morning. My name is Dan Price, and I represent the plaintiff in this case, Virginia Bruns. It's a slip-and-fall case. In March of 2012, Mrs. Bruns was walking on a public sidewalk that approaches an eye clinic in Centralia. There's no question in the evidence that the sidewalk, the area where she fell, was a public sidewalk. It's that area that would connect the street up to the private property. I've actually included, I think it's page 11 of the appendix of the brief, and thereafter a series of photographs that show the defect that was present in the sidewalk on the day that this happened. It had been there for a number of years. There's a big tree just adjacent to this. It's on the city property. It pushed a panel or two up several inches. There's even a ruler on one of those photographs, which establishes, hopefully to the court's satisfaction, the defect that brings us here today is not a de minimis defect in any way, shape, or form. The eye clinic was well aware of this. They had contacted the city. They had asked the city to fix this years before this happened. They had actually offered to remove the tree at their own expense so they could remedy the defect. The city said no because the tree was a historic tree. So the city made a choice. I felt that way, yes sir. I think that's exactly what they did. They were contacted again, I think it was 2009, when a pedestrian fell, if not on this particular defect, in this area. Another manager of the eye clinic contacted the city and asked them to do something about it. They said that they were aware of the situation. Again, that's three years before the plaintiff fell. Now the plaintiff knew about the defect. She'd been in the eye clinic several times. In fact, it had even occurred to her that this was an accident waiting to happen. And as you can see from the appendix, page 11, there is a set of steps and a door that is in close proximity to this defect. That's the eye clinic door. It's one of the entrances to the eye clinic. That's where she was going and that's where she was looking at the time she fell and seriously injured herself. Let me ask you, I assume this is in the record, you say eye clinic. Was this an optometrist office or was this a... It's been there 100 years. It's a very well-established, well-known place in Centralia. It's got ophthalmologists, optometrists, they sell glasses, a surgeon's office there, and they have several in the area now. But that was the Haley Eye Infirmary in like the 1890s, so it's been there a long, long time. So it's the kind of place where they dilate people's eyes as part of examinations and things like that as well? Absolutely. That's exactly what they do. The in-and-out office procedures are performed there. So I think the law that controls this is pretty easily determined. It starts in 1985 when a man named Ward walked out of the Kmart store in Champaign, Illinois, carrying a big box and walked into the post, which sounds out of space like kind of a silly thing to do, but it's human nature, and it's something that human nature recognizes, and thus the law recognizes. And there's a series of Supreme Court cases that take this into account. There's Ward. There's Diver. There's Rexville. And all of them focus on the distraction exception. You know, Ward recognized 343A in the restatement and comment F, which incorporates the distraction exception itself. The question then becomes how you apply the distraction exception and where it does and doesn't have application. The plaintiff in this case says she was looking in front of her. She was looking at the steps. She was looking at the door she was going to enter. And it's our contention that that is a proper application for the distraction exception. You know, as you can see from the photograph, and we have not contended, that that defect in that sidebar was not open anomalous. I think you have to say that it was just looking at it. That's really not for the court's determination. So the narrow question that this case presents is does the distraction exception apply for this court to say there should be a duty imposed here, and for this lady to get a try? So if the distraction exception applied, the jury would still have the opportunity to assess contributory negligence. Oh, sure, sure. And that's to be determined if the court sees fit to grant Mrs. Brunson relief. I mean, 12 people can look at this, and they can look at the city's conduct, having known about this for years and done nothing, and they can look at the conduct of the plaintiff and decide where the fault lies with a thing like this. We took a deposition of the public works administrator, and it's in the brief several times. He looked at this in the photographs, because they replaced it right after this happened, and he said, you know, that's a hazardous sidewalk. It's dangerous. I mean, that's admitted. He says if the city knew about that, the city was neglectful in not doing something about that. And he recognized what I would argue to a jury that, and it's in several cases, the YMCA case, for example, that people don't walk around looking down at all times. They look forward. They look where they're going. They look what they're approaching. And in this case, I contend, the plaintiff contends, that it was foreseeable, and I think that's really the test that this court should apply as warranted by the cases, is from the point of view of the possessor of the land, what is foreseeable as a distraction? I mean, I really think that's the test that needs to apply. We've cited several of the cases in the brief that talk about that in one form or fashion, and this is right in front of those steps, and it's foreseeable from the city's perspective that a permitted user would be walking up there looking where he or she was going. And there might have been. Mr. Price? Yes, ma'am. Did the court rule there was no duty? The court did. The court did. Granted summary judgment against the plaintiff. So that was the basis for finding as a matter of law that there was no duty? Yes, Your Honor. Not that the distraction exception applied. Never got that far? No, the court decided that the distraction exception did not apply as a matter of law, and therefore there was no duty on the part of the city because this was an open and obvious hazard. And what was the condition of your 80-year-old lady? Well. I mean, did she use an assistive device of any kind? No, she didn't at the time. You know, she's not ñ I wouldn't call her infirm, but she is 80 years old, a cancer survivor, and she was going to the eye clinic. They have her eyes examined. She'd been there several times for that same purpose. Some procedure called a YAG laser was one of the things she had done. So, I mean, she's pretty good for an 80-year-old, but she was 80. And it's natural, I would think, that any person approaching that door would look at the door and look at the steps. And, I mean, to me it's a classic distraction exception case. The trial court, I believe, was overly concerned with broadening the distraction exception, saying that basically the exception would swallow the rule if he recognized its application in this case. You know, quite frankly, we think that was an incorrect decision. The court did reference in its order, granting summary judgment for the city, that it felt that it was inappropriate to apply the distraction exception unless instructed to do so by a higher court. And that's what brought us here, and I think that it's an appropriate application for that document. You know, as you look at the cases, one of the things that comes up from time to time is, did the owner or possessor of land create the distraction themselves? And it goes both ways in the cases. You know, there's a construction case, Clifford or something like that, where the general contractor didn't create the distraction but knew about it. There's a case from this court a few years ago, it was a pleading case, where there was some high wires and somebody had a piece of conduit, who ended up being the plaintiff, and got the conduit into the high wires and received a serious injury. And this court granted summary judgment, or further dismissal of the complaint is what I think it was, saying that in that situation, the landowner could not be expected to anticipate that someone would be working there and come in contact with those wires. And I think those are very different situations than the one we have before us, because here you have a fixed object, and this sidewalk leads right to the object. And it's been there in that condition, you know, for decades and decades. So is it foreseeable under these circumstances that someone would look at the door? Of course it is, to me. Now the city didn't put the door there, the eye clinic put the door there, but the eye clinic has the city sidewalk leading to it, and the city very well knew that. My point being that it doesn't really matter under the circumstances whether the defendant created a distraction or not. The ultimate question is, is the distraction that occurred a foreseeable distraction? I mean, there are parts of my opponent's brief that say it's important that the city didn't create the distraction. They didn't make the door, they didn't make the steps. But if you take that argument to its final destination, you can have a huge defect like that. You could have it in a business district where there are display windows all around, and you could say that, you know, somebody fell. Well, it's not our fault that they fell. They were looking at these other windows. And we just own the sidewalk and maintain it. That makes no sense to me. I mean, if it's foreseeable that someone would be distracted by the circumstances, then the distraction exception ought to apply to raise a duty. You're, in effect, conceding that it was an open and obvious danger and that the open and obvious danger rule applies to a municipality under these circumstances. Yes, I am. In other words, the city can just sit back, and as long as the hazard gets obvious enough, they have no liability. Well, that's their point of view on it. In other words, if it's de minimis, there's nothing. If it gets to be three inches high, it's open and obvious. And if the city can just weather the tree roots pushing the sidewalk up in between, they've got no liability on either end. Well, that's the position they take, and I'm having some trouble with that myself. I don't think that there's a policy that occurs to me that says you should allow a city or any other occupier of land to have a known danger and just ignore it when they're warned about it and then take the position when somebody's heard on it, well, it's open and obvious, and we owe no duty. I mean, what purpose does that serve in the law? Well, I'm trying to figure out, you're trying to go strictly on the distraction exemption or the open and notorious? Yes, sir. Where are you? Well, we concede in the brief that this is an open and obvious condition upon the land. Right. And the court found that, and we didn't disagree with that. But 343A of the restatement says that that is not the end of the analysis. That's the beginning of the analysis, because even though you have an open and obvious condition, you have two recognized exceptions in Illinois. There's the deliberate counter exception and the distraction exception. In this case, the evidence lends itself to the distraction exception. And if the court were to find that the distraction exception applies, what that does is, notwithstanding the fact that the condition is open and obvious, there is still a duty on the part of the landowner if they should foresee that someone would encounter this and momentarily forget its presence and injure themselves as a result of it. Well, here's where I'm going. Apparently, you know, there's been a lot of cars driving into restaurants, and in St. Louis there was just recently a post office, and I don't know if they killed somebody in there or not. So then you think, and also with all the terrorism going on, that maybe all entrances like stores and that should have poles with concrete inside, you know, metal poles to stop these vehicles from running into the buildings. So then what do you do to not have a distraction, because I'm sure you're going to be sorting your mail, you know, like this when you're walking out of the post office. Is there an answer to that? Well, I'm not sure. I think that probably would look, at the end of the day, I think that really comes down to the common sense of all people. You know, is this condition a condition that should give rise to liability or isn't it? If you're going to put those posts in front of a post office or a fast food place, I think you would have the duty to put them in a sensible place where they would minimize the hazards that they would pose. Well, you'd have to put it in a place where a car couldn't get through them or a truck. Well, and also where there would not be as much of a hazard as there could be to the people using the place. I mean, that's design. Well, I was trying to figure it out. I haven't been able to figure it out. I don't know. That's a really good question, Your Honor. I don't have a good answer for it. But I do think that it doesn't take a lot of stretching of the imagination to say you could take that and if somebody walked into one of those posts and somebody could prove that they were ill-placed, that that would be a war-type case. You know, I mean, it would be very similar to that. So, anyway, those are the parameters that this case presents. And unless the Court has any questions, I'll cease at this point. Thank you. Thank you very much. Mr. Funk? What about it, Mr. Funk? I'm going to ask you a question right off the bat here. Is that what the open and obvious danger rule was designed to do, to just allow a landowner to watch a dangerous condition create before its eyes or be created before its eyes and then have no duty whatsoever? I mean, the undisputed facts are here that tree roots have been pushing this sidewalk up for years and the city has known about it for years. Well, Your Honor, I agree with you that the defense seems counterintuitive, but it is a defense allowed to defendants. And the open and obvious portion of this case has been conceded by the parties. So we've agreed already that absent finding that the distraction exception was high, the open and obvious doctrine controls here and the city, in fact, did not owe a duty to the plaintiff. The flip side of that point is that the city is allowed to believe that those who enter its property are going to act with reasonable care. And an open and obvious defect, avoiding that, it's assumed that people will. Well, the city has a duty by statute to maintain its property in a reasonably safe condition. I would agree, Your Honor. I mean, we've gone through a period of years here of that sidewalk raising, and they have a duty to do something about that somewhere down the line? I would agree, Your Honor, that typically 3-102 of the Tort Immunity Act implies that the municipality has a duty to keep their property in reasonably safe condition. But that's subject to defenses that a municipality can raise. And this is one of them. As a landowner, they can raise the open and obvious defense. We did that in that case. It was conceded by the plaintiff. That means we have no duty subject to the distraction exception potentially applying. Doesn't that give cause to the issue of foreseeability? I mean, I'm not clear how the trial court found as a matter of law that there was no foreseeability in light of the long line of cases that talk about this. Well, when we're dealing with the open and obvious doctrine, I mean, Supreme Court case law makes it clear that this is a question of law. So whether the distraction applies would be a question of law. The open and obvious doctrine goes to duty, which is for the circuit court to determine. But we've conceded open and obvious. Now we're at the distraction exception. Which is part of the analysis. The question is, could a landowner anticipate that somebody would become distracted or forget about the defect that they've seen? Where does one draw the line in this case? Well, in this case, first, there are additional facts that haven't been argued yet. And that is that the plaintiff saw this defect on the day of the accident. She had seen it nine times prior in the three-month span and three times in the week before. She said she saw it every time she went there. And so as she's walking up the sidewalk on this particular day, she sees the defect. And instead of charting a course around the defect, she decides to walk directly at the defect. As she's walking towards the defect, nothing causes her to become distracted. Nothing causes her to divert her attention. She simply looks up at the door, which if you look in the pictures in the record, is nowhere close to the defect. It's off in the distance. There's no reason why she would divert her attention to that time. But she did. There's also no lapse in time there that she would have forgotten about the defect. We're talking about a matter of seconds by the time she gets to the curb and to the defect. So it's the plaintiff's own inattentiveness. But I would argue, as we did in our brief, that first and foremost, this isn't a distraction. A distraction connotes some kind of, and the case law bears this, some type of hazard, some type of external stimuli, some reason why you were looking somewhere else other than your own inattentiveness or decision, conscious decision, to look somewhere else. Okay, the guy who came out of Kmart Ward, he's carrying a package. And what happened that distracted him other than he was being inattentive? Look, in that case, the Supreme Court, and this goes to what I think is a consensus amongst the appellate courts, including the Fifth District, that the defendant had to create, contribute to, or somehow be responsible for the distraction. And in Ward, Kmart sold these items to the plaintiff. And the Supreme Court said, you can anticipate that somebody would be carrying them. In that case, it was a five-foot mirror. Somebody would be carrying this item out your doors and right into those barriers that were just directly outside the door. If they weren't off in the distance, they were right there. And the doorway in Ward was not clear, so you couldn't see those holes before you got outside the door. So the door opens, you're carrying an item, and two steps out, I believe he said it was one or two steps out of Ward, he ran into the post. So the Supreme Court said to Kmart, you can anticipate somebody's going to be carrying this. So what if this lady would have been distracted by being enamored by this historic tree that the city refused to cut down? If she would have testified while I was looking at this beautiful tree, then wouldn't that be something that would fit your argument? I would say that the city cannot anticipate somebody's own personal or conscious decision. And the Whittleman case, which this court decided in 2005, bears that out. If simply looking out at the distance, off in the distance, by conscious decision, look off in the distance, knowing that you're about to encounter something that you've encountered nine times in a row, and you look off into the distance and you make that conscious decision, then anything is a distraction. You look at your cell phone, which there is the Wilfong case, where I believe it was the 1st District, that looking at or answering a cell phone call is not a distraction. The Lake case, which is a 4th District case, in which they cite this court's reasoning in Whittleman, where the plaintiff was carrying groceries. And that's similar to the Ward case, except for in that case the court said, well, the defendant did nothing to cause you to carry those groceries. They didn't sell you the groceries, you weren't on their premises, you were just carrying the groceries. So they make the distinction between the defendant having some kind of role in this, whatever it may be. You have the Whittleman case, and I would focus on this court's reasoning, and I hate to read a portion, but I think it's so important because it is this court's reasoning. And this court's reasoning has been adopted by the 4th District, the 2nd District. It's in line with Supreme Court case law. It's also in line with all the other districts, including the 1st District, that adopted this reasoning after this court's decision. And in that case, as counsel said, that was where somebody was working near some power lines. His employer put him in those power lines, or near those power lines. And this court stated, The fact that Whittleman cites no case in which the plaintiff creates his own distraction is telling. Courts would likely find it difficult to reach such a conclusion. A plaintiff should not be allowed to recover for self-created distractions that a defendant could never reasonably foresee. I guess my problem there is that the city knew that somebody had fallen on this property before, because iClinic employees had called. Is that not true? That is not true. Whether it may be there's something in the area, but there's no evidence that anybody ever fell on this defect. What about the city's historic tree committee? Did the city have a tree committee? I believe they did. And what was the purpose of that committee? Just to determine what trees should be taken out or should not be taken out because of historical significance, I believe. And those facts aren't really developed in this case. But we're also not to that point yet. We're not to notice in this case or determination of whether it's de minimis or not de minimis. We're still back at the duty stage. But isn't the duty determined by the facts? I mean, how can you determine a duty without looking at some of these facts that you say aren't well developed yet? Well, we know there's no duty because it's been conceded in this case. It's been conceded that it's open and obvious. Therefore, there is no duty barring application of the exception. And I would point out that the Illinois Supreme Court has called the distraction exception a limited exception. Well, it wasn't conceded in the trial court. In the trial court, the trial judge specifically held that it was an open and obvious danger. Now, maybe it hasn't been specifically argued in this court in the briefs, but as far as reviewing the trial judge's ruling, the trial judge held it was an open and obvious danger. That's where the determination was made there was no duty. And that point was not strenuously argued in the motion for summary judgment. The focus was on the distraction exception. As you heard counsel say, if you look at this defect, it's out in the open, in the middle. There's no doubt it's open and obvious. The question is, was this person a distraction? And then two, does the Illinois case law bear that the distraction exception applies? Absolutely. The case law, there's not one. As a matter of public policy, what's the point of even having a statute that says a municipality has a duty to maintain its property if we say once it gets bad enough, they don't have to do anything about it? I don't understand what duty the city has then. The Illinois Supreme Court has recognized it's a two-way street. You have a duty, but at a certain point, you have to rely on a person's invitees, exercise of reasonable care. And there have been parties. The Illinois Trial Lawyers Association has tried to do away with the distraction exception, an open and obvious doctrine, because there's comparative negligence in this case. And that was, I believe, in the ward. And the Supreme Court specifically rejected that. The open and obvious doctrine, like I said, I agree. Anybody – I'm advocating on behalf of my client, but anybody can say that it's counterintuitive. But it is a defense, and it is – and we are entitled to raise it. It has been conceded in this case. And now we're just focusing – or I would argue we're just focusing on the distraction exception. And I rely on Whittleman. I also rely on the 1st District's decision in Sandville and all the cases, basically the progeny of Whittleman, which Lake, 4th District, cites this court's decision. 2nd District cites this court's decision. Then you have Ward, Deibert, Rexroad. All of those cases, the defendant in some way, shape, or form played a role. They somehow caused the exception or distraction or somehow were involved in the distraction. Here it is simply a conscious decision of the plaintiff to look somewhere that is not necessary to look. That it's not a hazard she's looking for. It's not some external stimuli. It's not a jackhammer. But it is a tree that started out without causing a problem in the sidewalk. And then over the years, with the city watching, the city allowed it to become hazardous. Isn't that what Justice Stewart is asking about? I mean, how does the city sit back when it has a duty at the beginning of the planting and then watch this thing become a hazard and have no... I mean, your argument seems to be that they had nothing to do with this hazard. And yet they have a tree committee. They have a street department, I'm sure. So how do you get around the fact that they allowed this to happen and knew it was happening? Justice Gates, at the time, what I'm saying is they played a role in her distraction. But they played a role in the hazard that caused the distraction. And I would argue and submit that municipalities have hundreds of miles. The city of Centralia has hundreds of miles of sidewalk. They don't have the money to repair all the sidewalks. They have decisions to make and where they spend their money. It was a discretionary decision not to repair that D thing. But that is not, I do not believe, the issue here. The issue is whether the distraction exception applies, whether we had any role in her distraction or her claim distraction. I would argue it's not a distraction. But, and more, selling items to somebody, knowing they're going to carry them out the door. In Rexborough, giving somebody equipment to carry through a dangerous area. In Deaverton, putting an employee in a construction zone where there's falling debris coming from outside a window. In all of these cases, the defendant, in some way, shape, or form, caused or contributed to the distraction. And that's just not the case here. If this is a distraction, then anything is a distraction. Looking at your watch, talking to a friend while you're walking down the sidewalk, looking off in the distance. Well, it was certainly foreseeable to the city that someone could trip and fall at this defect. And so, you know, why not, I mean, why not let a jury decide, you know, whether she was more than 50% contributory negligent or, and so on. This, rather than say there's no duty, period, under these circumstances, where an 80-year-old woman's walking to the door of an iClick. Because the law says in the Illinois Supreme Court, and this court's case law, the Wittleman case, is directly on point. The reasoning in that case says there's no duty. And it may be, and I can see, Your Honor, that you think it's a harsh result, but it is the law, and it is what the Illinois Supreme Court has deemed to allow defendants to raise as defense. And some may call it unfair. You know, the distraction, or the open and obvious might be counterintuitive to some, but it's what the Illinois Supreme Court has mandated. It's what this court has found in the past, and it's what other districts have adopted the reasoning of this court. And as long as the defendant does not play any role, and once again, this is not a distraction, in my mind, in any way, shape, or form. And I've cited cases in our brief that are exactly like this, where it's just a plaintiff making a conscious decision to look somewhere else other than at the defect they knew was there. And the courts say, that is not a distraction. But if it does qualify as a distraction, then this court's reasoning comes in, and it is directly on point. And so, therefore, we request the court affirm the trial court's decision, which we believe, under the law, was the only decision the trial court could make. And if the court and the justice don't have any further questions. Thank you, Mr. Funk. Thank you. Thank you. Price, any rebuttal? Thank you. I won't take a lot of time, but I really do kind of feel like Mr. Funk has, in a sense, misrepresented the state of the law on a couple of points. One is, a fair reading of the Swindleman decision by this court previously does not support it. I guess you both embraced it, so you'll have to tell us which one of us has got it accurately. But one quote from the opinion itself is on page 16 of our brief. There is no clear-cut rule that the distraction must be caused by someone other than the plaintiff in order to be deemed foreseeable. The cases cited by the parties all involve distractions created, in some respect, by the defendant or by third parties. So, I mean, these things come in so many different stripes that I don't think you can lay down a rule as artificial as Mr. Funk was advocating. There's the Rex Road decision. The distraction in that case was the young man that stepped in the hole as the manager of a football team and carried a football. What did that have to do with the defendant? It's the mission and the state of mind of the plaintiff at the time this happens, and whether what happened to them in those circumstances is such a fact pattern that it should be foreseeable to the owner or possessor of the land. I think that's really the test. Before I started with this, in a way, all of the different distractions that occur are of, to a certain extent, the plaintiff's making. I mean, that's human nature, the man with the box, the man walking out of the bathroom when he looks up instead of looking at the tree roots because people have been throwing things. You know, you can't look two places at once. There's even a decision that very well recognizes that. And so the question becomes, you know, half of Mr. Funk's argument was that the plaintiff was contributory negligence. Well, you know, that's a good argument to a jury. It may be successful and it may not, but that's up to the jury to measure each of the conduct of each of the parties here. I respectfully request that the summary judgment against Mrs. Bruns be reversed and that she be allowed to have the trial. I'm sure the record will reflect that we've asked for an expedited appeal because of Mrs. Bruns' age, and that's certainly been appreciated. This actually was granted in February, and here we are at the end of August, which is rather fast, you know, by appellate standards. And if the court sees fit to grant Mrs. Bruns any relief, anything that could be done to expedite that would, of course, be appreciated as well. Thank you very much for your time. All right. Thanks to both of you gentlemen for your briefs and your arguments. It's an interesting case. We'll take this matter under advisement and issue a decision in due course. Thank you. We'll be in recess for a few moments. All rise.